# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 23 2019, 10:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Sean C. Mullins
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Taylor C. Byrley
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Larry Gene Vickery, *Appellant-Defendant,* | May 23, 2019 |
| | Court of Appeals Case No. 18A-CR-2477 |
| v. | Appeal from the Lake Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Clarence D. Murray, Judge |
| | Trial Court Cause No. 45G02-1707-F1-8 |

**Pyle, Judge.**

# Statement of the Case

Larry Gene Vickery ("Vickery") appeals, following a guilty plea, the twelve-year sentence imposed for his Level 3 felony criminal confinement conviction.[1] He argues that his sentence, which was ordered to be served at the Indiana Department of Correction, is inappropriate. Concluding that Vickery has failed to show that his sentence is inappropriate, we affirm his sentence.

We affirm.

# Issue

> Whether Vickery's sentence is inappropriate pursuant to Indiana Appellate Rule 7(B).

# Facts

In July 2017, Vickery was out on bond in two separate domestic violence causes in which his ex-wife, Jennifer Ledbetter ("Ledbetter"), was the victim. At that time, she had a protective order against him. Vickery and Ledbetter have two daughters and a three-year-old son ("Son"). On July 6, 2017, Vickery went to Ledbetter's home to speak to Son. Ledbetter did not let Vickery in the house because of the protective order but allowed Son to stand by the door. Vickery forced open the door, pushed Ledbetter to the floor, and sprayed her face with pepper spray. Son, who was standing nearby, was also exposed to the pepper

---

[1] IND. CODE § 35-42-3-3. We note that, in the recent 2019 session, our legislature amended this statute. That recent amendment does not affect this appeal.

spray. Vickery handcuffed Ledbetter, beat her, and told her that he was going to kill her. Vickery then took the three children and fled the scene. Ledbetter ran to her neighbor's house and called the police. Shortly thereafter, while the police were on the scene, Vickery called his mother and told her that he refused to turn himself into the police and that he had planned to kill Ledbetter and "go out with a boom on television[.]" (App. Vol. 2 at 48) (internal quotation marks omitted). The police later arrested Vickery.

[4] The State charged Vickery with: (1) Level 1 felony attempted murder; (2) Level 3 felony criminal confinement; (3) Level 5 felony criminal confinement; (4) Level 5 felony domestic battery by means of a deadly weapon; (5) Level 5 felony domestic battery by means of a deadly weapon; (6) Level 6 felony domestic battery resulting in moderate bodily injury; (7) Level 6 felony domestic battery; (8) Class A misdemeanor domestic battery; (9) Class A misdemeanor domestic battery; (10) Level 2 felony burglary; (11) Level 3 felony burglary; (12) Level 5 felony battery; (13) Level 5 felony neglect of a dependent; (14) Level 6 felony neglect of a dependent; and (15) Class A misdemeanor invasion of privacy.

[5] Vickery entered into a plea agreement and pled guilty to the Level 3 felony criminal confinement charge in exchange for the State's dismissal of the remaining fourteen charges in this cause and the dismissal of the two other causes involving Ledbetter as a victim (one in which he was charged with Level 6 felony intimidation and Class A misdemeanor invasion of privacy, and the other cause in which he was charged with Level 6 felony domestic battery and

Level 6 felony strangulation). The plea agreement also provided that sentencing would be open but have a cap of twelve years.

[6] During Vickery's sentencing hearing, Ledbetter testified about the details of Vickery's crime against her. Specifically, she testified that Vickery had planned his attack and that, shortly before July 6th, he had called the cable company and cancelled the account for her home alarm system. She also described the July 6th offense and how he had pepper sprayed her face and continuously punched and kicked her while Son "screamed in pain" from the mace that had gotten on him. (Tr. Vol. 3 at 11). Ledbetter begged Vickery to let her help Son, but Vickery refused. Instead, he repeatedly told her that he was going "to cut [her] body into pieces" and that she "was going to die slowly." (Tr. Vol. 3 at 12). She told the trial court that she and Son still had nightmares about Vickery's attack and that Son would frequently "awaken in the middle of the night, screaming about how his father shot fireballs at us." (Tr. Vol. 13). Ledbetter also read a victim-impact statement and revealed painstaking details about the repeated domestic abuse she had endured at the hands of Vickery during their thirteen-year relationship and his ongoing manipulation of her.

[7] Vickery's counsel acknowledged that the twelve-year sentencing cap set out in the plea agreement was an "appropriate" sentence, (Tr. Vol. 3 at 30), and he recognized that community corrections had written a letter indicating that he was "not eligible for direct placement to Lake County Community Corrections" due to committing his offense with a deadly weapon. (App. Vol. 2 at 188). Nevertheless, Vickery argued that the trial court should divide his twelve-year

sentence in the following manner: four to five years in the Indiana Department of Correction, followed by three to four years in community corrections, and then three to four years on probation. (Tr. Vol. 3 at 30). Vickery also told the trial court that, at the time of his offense, he had been using steroids for two years, and he introduced a psychosocial assessment from 2012 and April 2017, which showed that he had been diagnosed with anger issues, depression, and anxiety.

[8]     When sentencing Vickery, the trial court commented, in part, as follows:

> The nature and circumstances of the crime are just unimaginable. Certainly[,] a significant aggravating factor in this case is the nature and circumstances of the crime.
>
> One of the things I heard this morning that I found especially disturbing was in Mr. Vickery's own comments that he -- he didn't spray his child with pepper spray. He sprayed it, and essentially the child walked into it. The notion that any aspect of that would be somehow acceptable or mitigating, I don't understand the thinking there, that to spray pepper spray in someone's face in the first place is a crime. He did it in his ex-wife's face, in her home, around the children. The children lived there. That's an extremely dangerous act. He may as well have sprayed it in his children's faces. They live there. And they were exposed to it, at least one child was.
>
> This case represents one of the most disturbing accounts of spousal abuse that I can recall in my memory which goes back several years as a judge on the criminal bench. The attacks by Mr. Vickery, they've been relentless, calculated, clearly meant to severely injure -- and I don't use the word lightly -- but terrorize the victim in this case. Mr. Vickery's own comments this

morning, in his comments he stated that he admitted to using control and violence to control the situation as he put it.

I don't know how long it would take a child or any human being to forget having mace sprayed at them. There was a comment this morning that the toddler stated that his daddy sprayed fireballs at him. One can only speculate if that creates a memory for a lifetime, it's -- it's mind boggling. I suspect that the memory will be with this child for a long time. From where I sit, Mr. Vickery, these children don't need your presence in their lives; they need your absence. You have been an absolute menace to your ex-wife and your children, sir.

(Tr. Vol. 3 at 37-38).

[9] The trial court specifically rejected Vickery's proffered mental health report to be a mitigating circumstance. The trial court, however, found Vickery's guilty plea to be a mitigating circumstance but stated that it did "not carry any significant weight because the evidence in this case [wa]s substantial and would likely have lead [sic] to a conviction had the case gone to trial." (Tr. Vol. 3 at 38). The trial court found the following aggravating circumstances: (1) Vickery's criminal history, which included seven felony convictions involving crimes of dishonesty[2] and three probation violations; (2) the nature and circumstances of the crime, which the trial court found to be a significant; (3) Vickery committed the offense against the victim when he was on bond in two other domestic violence cases involving the same victim; (4) he violated a

---

[2] Vickery's seven prior felony convictions included: two separate causes for Class D felony check fraud in 2002; Class D felony theft in 2002; Class D felony theft in 2003; Class D felony check fraud in 2003; and two counts of Class D felony receiving stolen property in 2011.

protective order against the victim; and (5) Vickery's "morally depraved" character. (App. Vol. 2 at 121). The trial court imposed a twelve (12) year sentence and ordered it to be executed at the Indiana Department of Correction "with no alternative placement and no probation." (Tr. Vol. 3 at 38). Vickery now appeals.

## Decision

[10] Vickery argues that his twelve-year sentence is inappropriate. He does not challenge the duration of his sentence, which was within the sentencing cap contained in his plea agreement. Instead, Vickery challenges the trial court's sentencing decision regarding placement, arguing that this Court should order the trial court to impose a "split sentence" with the time divided equally between community corrections and the Indiana Department of Correction. (Vickery's Br. 10).

[11] We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The defendant has the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of a Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).

[12]     When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. Here, Vickery entered a guilty plea and was convicted of Level 3 felony criminal confinement. A Level 3 felony has a sentencing range of six (6) years to sixteen (16) years with an advisory sentence of nine (9) years. I.C. § 35-50-2-5(b). The trial court imposed a twelve-year sentence, which is less than the maximum sentence and consistent with the sentencing cap set out in Vickery's plea agreement.

[13]     The location where a sentence is to be served is an appropriate focus for our review and revise authority under Appellate Rule 7(B). *Biddinger v. State*, 868 N.E.2d 407, 414 (Ind. 2007). However, "it will be quite difficult for a defendant to prevail on a claim that the placement of his or her sentence is inappropriate." *Fonner v. State*, 876 N.E.2d 340, 343 (Ind. Ct. App. 2007). Indeed, "the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *Id.* at 344 (emphasis in original). "A defendant challenging the placement of a sentence must convince us that the given placement is itself inappropriate." *Id.*

[14]     Turning to the nature of Vickery's criminal confinement offense, we note that Vickery acknowledges the "aggravating nature" of the offense. (Vickery's Br. 8). The trial court found the nature and circumstances of Vickery's offense to be "unimaginable" and "significant[.]" (Tr. Vol. 3 at 37). The record reveals

that Vickery cancelled the account for his ex-wife's home alarm system shortly before he went to her house where he sprayed her face with mace, handcuffed her, repeatedly beat her, and threatened to kill her. Indeed, he repeatedly told her that he was going "to cut [her] body into pieces" and that she "was going to die slowly." (Tr. Vol. 3 at 12). The nature of his offense was exacerbated by the fact that Vickery committed his brutal acts against Ledbetter in the presence of their three-year-old child, who "screamed in pain" from the mace that Vickery had sprayed and who had to watch as Vickery beat the toddler's mother and refused to let her console the young boy. (Tr. Vol. 3 at 11).

[15] Turning to Vickery's character, we note that his poor character is revealed by the facts that he committed his offense against Ledbetter while he was out on bond from two domestic abuse cases involving Ledbetter and that he did so in violation of the protective order she had against him. Additionally, he has a criminal history, consisting of seven prior felony convictions and three probation violations. Vickery contends that his prior convictions, which included check fraud, theft, and receiving stolen property, show that he has "a non-violent character[.]" (Vickery's Br. 9). He seems to suggest that we should ignore Ledbetter's victim impact statement made during the sentencing hearing, which revealed that Vickery's character was far from "non-violent." When reflecting on Vickery's character, the trial court noted that Vickery was "morally depraved and use[d] violence as a means of control[,]" and the trial court "consider[ed] [Vickery] to be extremely dangerous to the victim and her children because of the numerous charges and protective orders involving the

same victim[.]"(App. Vol. 2 at 121). Furthermore, the record reveals that community corrections determined that Vickery was not eligible for such placement because his offense involved the use of a deadly weapon.

Vickery has not persuaded us that his twelve-year sentence and placement in the Indiana Department of Correction for his Level 3 felony criminal confinement conviction is inappropriate. Therefore, we affirm the sentence imposed by the trial court.

Affirmed.


Riley, J., and Bailey, J., concur.